UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JOAQUIN HERRERA AVILA,

                Petitioner,

v.

PAMELA BONDI, *Attorney General*; KRISTI NOEM, *Secretary, U.S. Department of Homeland Security*; TODD M. LYONS, *Acting Director of Immigration and Customs Enforcement*; SIRCE OWEN, *Acting Director for Executive Office for Immigration Review*; PETER BERG, *Director, Fort Snelling Field Office Immigration and Customs Enforcement*; RYAN SHEA, *Sheriff of Freeborn County*; SAMUEL OLSON, *Director, St. Paul Field Office Immigration and Customs Enforcement*;[1] IMMIGRATION AND CUSTOMS ENFORCEMENT; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; and U.S. DEPARTMENT OF HOMELAND SECURITY,

                Respondents.

Civil No. 25-3741 (JRT/SGE)

MEMORANDUM OPINION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

---

Cameron Lane Youngs Giebink, David L. Wilson, and Katherine Lourdes Santamaria El Bayoumi, **WILSON LAW GROUP**, 3019 Minnehaha Avenue, Minneapolis, MN 55406, for Petitioner.

---

[1] The Court notes that Samuel Olson was not named as a Respondent in the Petition, but he was named in subsequent filings. Because the Respondents also name Olson as a Respondent and do not object to his exclusion from the Petition, the Court will assume that Olson's exclusion was a mistake and will add Olson as a Respondent to the Petition.

Ana H. Voss, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for Respondents Pamela Bondi, Kristi Noem, Todd M. Lyons, Sirce Owen, Peter Berg, Samuel Olson, Immigration and Customs Enforcement, Executive Office for Immigration Review, and U.S. Department of Homeland Security.

David John Walker, **FREEBORN COUNTY ATTORNEY'S OFFICE**, Freeborn County Government Center, 411 South Broadway Avenue, Albert Lea, MN 56007, for Respondent Ryan Shea.

Petitioner Joaquin Herrera Avila filed a Verified Petition for Writ of Habeas Corpus and a Motion for Temporary Restraining Order. The Court held a status conference on October 2, 2025, at which the parties consented to the Court deciding the merits of the habeas petition. Because Petitioner is being unlawfully detained, the Court will grant his habeas petition to the extent that he seeks an order requiring Respondents to provide him a bond hearing before the immigration judge under 8 U.S.C. § 1226(a). The Court will also order that Petitioner not be moved outside the District of Minnesota before the court ordered bond hearing. As a result, Petitioner's motion for a temporary restraining order will be denied as moot.

## BACKGROUND

I.     STATUTORY AND REGULATORY FRAMEWORK

In general, under federal immigration law, two statutes govern the detention of noncitizens pending removal proceedings—8 U.S.C. §§ 1225 and 1226. Petitioner argues that he is subject to the discretionary detention framework set forth in 8 U.S.C. § 1226(a), which requires that Petitioner be provided a bond hearing, and Respondents argue that

Petitioner is subject to mandatory detention under § 1225(b)(2). The Court will address each statutory provision in turn.

Section 1225 applies to "applicants for admission"—aliens who are either "present in the United States who ha[ve] not been admitted" or who "arrive[] in the United States." 8 U.S.C. § 1225(a)(1). Applicants for admission fall under either § 1225(b)(1) or § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation" as well as "certain other aliens designated by the Attorney General in his discretion." *Id.* (citations omitted).[2] Section 1225(b)(2) serves as a "catchall provision that applies to" almost all other applicants for admission not covered by § 1225(b)(1). *Id.* at 289.

Respondents contend that Petitioner is being detained under § 1225(b)(2). Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a," which addresses removal proceedings.

---

[2] Aliens subject to § 1225(b)(1) "are normally ordered removed 'without further hearing or review' pursuant to an expedited removal process" unless they "indicate[] either an intention to apply for asylum . . . or a credible fear of persecution," in which case the alien is then referred for an asylum interview. *Jennings*, 583 U.S. at 287 (quoting § 1225(b)(1)(A)). Neither party contends that § 1225(b)(1) applies to Petitioner.

Section 1226—which Petitioner contends governs his detention—applies to the apprehension and detention of aliens who are **already present** in the country and eligible for removal. *See Jennings*, 583 U.S. at 288; *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Section 1226(a) establishes a discretionary process: on an arrest warrant issued by the Attorney General, an alien may be arrested and detained while a decision on whether the alien should be removed is pending. Except as provided in § 1226(c), which applies to the detention of criminal aliens, the Attorney General (1) may detain the arrested alien, (2) may release the alien on bond of at least $1,500, with conditions, or (3) may release the alien on conditional parole. 8 U.S.C. § 1226(a).³

In short, 8 U.S.C. § 1225 allows "the Government to detain certain aliens **seeking admission** into the country," and § 1226 "authorizes the Government to detain certain

---

³ Section 1226(c) imposes mandatory detention on a defined group of aliens, comprising of aliens who fall within "enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289. Individuals who are subject to mandatory detention include specific categories of "inadmissible" aliens. *See* 8 U.S.C. § 1226(c)(1)(A), (D), (E). In January 2025, Congress passed the Laken Riley Act, which expanded § 1226(c)'s mandatory detention requirement to a new class of noncitizens, as long as two requirements are satisfied. Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E).

> The Laken Riley Act amendments mandate detention for noncitizens who are inadmissible under Sections 1182(a)(6)(A) (the inadmissibility ground for a noncitizen "present in the United States without being admitted or paroled"), 1182(a)(6)(C) (the inadmissibility ground for misrepresentation), or 1182(a)(7) (the inadmissibility ground for lacking valid documentation) and have been arrested for, charged with, or convicted of certain crimes.

*Maldonado v. Olson,* No. 25-3142, 2025 WL 2374411, at *10 (D. Minn. Aug. 15, 2025) (citing Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025); 8 U.S.C. § 1226(c)(1)(E)).

4

aliens **already in** the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289 (emphasis added).

## II.     FACTUAL BACKGROUND

Joaquin Herrera Avila is a native and citizen of Mexico who entered the United States without inspection in 2006. (Verified Pet. For Writ of Habeas Corpus ("Pet.") ¶¶ 32–36, Aug. 29, 2025, Docket No. 1.)  He also entered the United States on or about October 10, 2016, without admission or parole near Hildago, Texas.  (Decl. of John D. Ligon ("Ligon Decl.") ¶ 4, Ex. A, Oct. 1, 2025, Docket No. 11.)

On August 29, 2025, ICE encountered Petitioner during a traffic stop in Minneapolis, Minnesota. (*Id*. ¶ 5, Ex. A.)  Petitioner identified himself and admitted that he had entered the country illegally and lacked documentation indicating that he had legal status to reside in the United States.  (*Id.*)

Petitioner was arrested and issued a Notice to Appear on the same day. (*Id*. ¶ 6, Ex. B.)  The Notice to Appear represented that Petitioner was being detained under the Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) (codified as 8 U.S.C. § 1182(a)(6)(A)(i)), because he was "an alien present in the United States who ha[d] not been admitted or paroled" and under INA § 212(a)(7)(A)(i)(I) (codified as 8 U.S.C. § 1182(a)(7)(A)(i)(I)), because he was "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document." (*Id.*)  On the Notice to Appear, the box indicating, "You are an alien present in the United States who

has not been admitted or paroled" was checked, but the box marked "You are an arriving alien" was **not** checked. (*Id.*)

Similarly, Petitioner's Form I-213 Record of Deportable/Inadmissible Alien noted that Petitioner was subject to removal under Section 212(a)(6)(A)(i) because he was "present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." (*Id.* ¶ 4, Ex. A.)

### III.  PROCEDURAL BACKGROUND

In his Verified Petition for a Writ of Habeas Corpus, Petitioner alleges, among other things, that Respondents' actions are violating the Immigration and Nationality Act ("INA") and the Fifth Amendment of the United States Constitution.[4] (Pet. ¶¶ 87–95.) Petitioner filed a Motion for Temporary Restraining Order (Sept. 25, 2025, Docket No. 4), alleging that his continued detention without the opportunity to be heard in a bond hearing is unlawful. In the Motion, Petitioner asks the Court to (1) enjoin Respondents from moving him outside the District of Minnesota and (2) require Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a)(2)(A) within 7 days. (*Id.*)

---

[4] The Petition alleges six counts: (1) declaratory relief, (2) violation of the INA under 8 U.S.C. § 1226(a), (3) violation of the Due Process Clause of the Fifth Amendment, (4) violation of 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 arising from the unlawful denial of release on bond, (5) violation of Administrative Procedure Act ("APA") arising from agency actions that are contrary to law and arbitrary and capricious, and (5) violation of the APA arising from the failure to observe required procedures. (Pet. ¶¶ 83–112.)

On October 2, 2025, the Court held a status conference during which the parties agreed to have the Court decide the merits of the Petition.

## DISCUSSION

It is well-established that "absent suspension" by Congress, the Constitution guarantees that the "writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. 1. § 9, cl. 2). The writ of habeas corpus has served as a vital check on executive power throughout our nation's history. *Id.* The petitioner must prove unlawful detention by a preponderance of the evidence. *E.g., Aditya W.H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025).

Respondents make two main arguments as to why the Court should deny the habeas petition. First, Respondents argue that the Court lacks subject matter jurisdiction under 8 U.S.C. § 1252(g).[5] Second, Respondents argue that Petitioner's claims fail on the

---

[5] Respondents also assert that certain named Respondents are not proper parties to the case and that Petitioner's APA claim should be dismissed. As to the proper parties, Respondents argue that the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Executive Office for Immigration Review (EOIR), and Sirce Owen are not the proper parties to this action because they are not the **persons** who have custody over the Petitioner. (Resp'ts' Consolidated Resp. to Pet. for Writ of Habeas Corpus and Mot. TRO ("Resp'ts' Opp'n Mem.") at 12–14, Oct. 1, 2025, Docket No. 10.) Respondents correctly note "that the proper respondent to a habeas petition is the person who has custody over [the petitioner]." *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (alteration in original) (citation and internal quotation marks omitted). Notably, Respondents do not argue that Attorney General, Pamela Bondi; Secretary of DHS, Kristi Noem; or the Director of the ICE St. Paul Field Office, Samuel Olson are improper parties; instead, they assert that Samuel Olson is the proper party because he has custody over the Petitioner. Although Respondents appear to be correct, it is unclear on this record who would be responsible for complying with this order granting the Petition and conducting the ordered bond hearing. The Court thus declines to dismiss DHS, ICE, EOIR, and Sirce Owen. As for the Respondents'

7

merits because § 1225(b)(2) mandates Petitioner's detention. The Court will address each argument in turn, after addressing the addition of Samuel Olson as a party.

### I.  SAMUEL OLSON

Samuel Olson, Director of the St. Paul Field Office, Immigration and Customs Enforcement, was not named as a Respondent in the Petition, but he was named in subsequent filings. Moreover, the Respondents also name Olson as a Respondent and did not object to his exclusion from the Petition. Indeed, Respondents assert that Samuel Olson is the proper party because he currently has custody over the Petitioner. The Court assumes that Olson's exclusion was a mistake and will, on its own initiative, add Olson as a Respondent to the Petition. Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.")

### II.  JURISDICTION

As a threshold matter, Respondents argue that the Court lacks jurisdiction to review Petitioner's claims under 8 U.S.C. § 1252(g). (Resp'ts' Consolidated Resp. to Pet. for Writ of Habeas Corpus and Mot. TRO ("Resp'ts' Opp'n Mem.") at 9–12, Oct. 1, 2025, Docket No. 10.)

Section 1252(g) provides that:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or

---

argument that the APA claim is not properly included in this action, the Court declines to resolve this issue because it is immaterial to the Court's resolution of the Petition.

>action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g); *see also Silva v. United States*, 866 F.3d 938, 940 n.2 (8th Cir. 2017). The Supreme Court has acknowledged that § 1252(g) is "narrow[]" and that it "applies only to three discrete actions that the Attorney General may take": (1) commencing proceedings, (2) adjudicating cases, or (3) executing removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.* In 2018, the Supreme Court reaffirmed its narrow interpretation of § 1252(g). *Jennings*, 583 U.S. at 294.

Respondents also contend that § 1252(g) "bars district courts from hearing challenges to the **method** by which the Secretary of Homeland Security chooses to commence removal proceedings, including the decision to detain an alien pending removal." (Resp'ts' Opp'n Mem. at 9–10 (citing *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016)). The Court disagrees.

Petitioner's habeas claim is not jurisdictionally barred under § 1252(g) because Petitioner is not seeking review of a decision to commence proceedings, adjudicate cases, or execute a removal order. Instead, Petitioner challenges, among other things, the lawfulness of his continued detention without receiving a bond hearing, and thus, the claim is "independent of, or wholly collateral to, the removal process." *Ozturk v. Hyde*, 136 F.4th 382, 397 (2d. Cir. 2025). The Court concludes, as other courts in this District

and elsewhere have, that § 1252(g) does not preclude Petitioner from challenging his unlawful detention. *See, e.g.*, *Belsai D.S. v. Bondi*, No. 25-3682, 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025); *Jose J.O.E. v. Bondi*, No. 25-3051, 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025); *see also Ozturk*, 136 F.4th at 397–98; *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023).[6]

Accordingly, the Court finds that 8 U.S.C. § 1252(g) does not divest the Court of jurisdiction over Petitioner's claims.

## III.   LAWFULNESS OF PETITIONER'S DETENTION

The central question in this habeas petition is which detention framework applies to Petitioner, a Mexican citizen who has lived in the United States for years but was never lawfully admitted to the country and is now facing removal proceedings. Respondents argue that apart from aliens falling under § 1225(b)(1) (aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation), § 1225(b)(2) requires detention of **any** noncitizen present in the country who has not

---

[6] Even if Petitioner's claims arose out of one of the three actions identified in § 1252(g), the Eighth Circuit has recognized "an exception to § 1252(g) for a habeas claim raising a pure question of law." *Silva,* 866 F.3d at 941. The question presented here is a narrow legal one—specifically, whether § 1225(b)(2) or § 1226 governs Petitioner's detention. *See Jose J.O.E.*, 2025 WL 2466670, at *7 (concluding that the question of whether a non-citizen detained under § 1226 is entitled to a bond hearing is a pure legal question that falls within "the exception to § 1252(g)'s jurisdiction-stripping provision, as it can be decided in the abstract on an undisputed factual record").

been lawfully admitted. Respondents' argument is unpersuasive for at least three reasons.

First, Respondents' interpretation conflicts with the plain meaning of § 1225(b)(2). Section 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a." 8 U.S.C. § 1225(b)(2)(A). "Applicants for admission" are aliens who are "present in the United States who ha[ve] not been admitted" or "who arrive[] in the United States." *Id.* § 1225(a)(1). Respondents argue that because "applicant for admission" is defined as any noncitizen who is present in the country and has not been admitted, any person who is present in the country who has not be lawfully admitted is subject to mandatory detention.

The problem with Respondents' argument is that it ignores the phrase "seeking admission" found in § 1225(b)(2), which implies a current action. *See Lopez-Campos v. Raycraft*, No. 25-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025) (acknowledging that seeking admission "implies action—something that is currently occurring, and in this instance, would most logically occur at the border upon inspection"). Here, Petitioner has lived in the country for years without seeking any lawful immigration status, such as naturalization, asylum, refugee designation, permanent residency, or a visa. If § 1225(b)(2)(A) applied to every "applicant for admission," there would be no

reason to include the phrase "seeking admission" in § 1225(b)(2)(A). The Court declines to read the "seeking admission" requirement out of § 1225(b)(2)(A).

Other courts have similarly rejected Respondents' broad reading of § 1225(b)(2) and have instead construed § 1226(a)'s plain language to apply to detainees in situations like Petitioner's.[7] *See, e.g.*, *Maldonado v. Olson,* No. 25-3142, 2025 WL 2374411, at *11 (D. Minn. Aug. 15, 2025); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256–57 (W.D. Wash. 2025); *Lopez-Campos*, 2025 WL 2496379, at *5.

The Supreme Court's decision in *Jennings* likewise confirms the Court's interpretation of §§ 1225(b)(2) and 1226(a). In *Jennings*, the Supreme Court made it clear that § 1225(b) applies to "aliens **seeking admission** into the country" while § 1226(a) applies to "certain aliens **already in** the country." *Jennings*, 583 U.S. at 289 (emphasis

---

[7] The Court acknowledges that the Board of Immigration Appeals (BIA) recently adopted Respondents' broad interpretation of § 1225(b)(2) in the *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). In *Hurtado*, the BIA concluded that § 1225(b)(2) applied to aliens classified as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General"—the same provision under which Petitioner is charged. *Id.* at 217, 225. The Court joins other courts in disagreeing with the BIA's interpretation. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) (holding that courts are required to exercise their independent judgment and "may not defer to an agency interpretation of the law simply because a statute is ambiguous"); *see, e.g.*, *Maldonado*, 2025 WL 2374411, at *11–13; *Reyes v. Raycraft*, No. 25-12546, 2025 WL 2609425, at *6–7 (E.D. Mich., Sept. 9, 2024) (collecting cases at odds with the BIA's interpretation of § 1225(b)(2) in *Hurtado*).

added).[8]  For at least these reasons, the Court rejects Respondents' broad interpretation that § 1225(b)(2) mandates detention of **any** alien present in the country and who has not been admitted.

Second, if the Court adopted Respondents' interpretation, Congress's 2025 amendments to § 1226(c) in the Laken Riley Act would be rendered superfluous. Although § 1226(a) provides that the Attorney General may (1) detain an alien, (2) release an alien on bond, or (3) release an alien on conditional parole, § 1226(c)(1)(E) mandates detention for certain categories of "inadmissible" aliens that have been charged with particular crimes.[9]

---

[8] In support of their broad interpretation of § 1225(b)(2), Respondents rely on *Florida v. United States*, 660 F. Supp. 3d 1239 (N.D. Fla. 2023), which considered the issue of whether the Department of Homeland Security (DHS) has the discretion to release or detain noncitizens apprehended at the border under § 1225(b)(2) or § 1226. However, the holding in that case undercuts Respondents' position. In *Florida*, the court explained that § 1225 and § 1226 "can be reconciled only if they apply to different classes of aliens." *Id.* at 1275 (quoting *Matter of M-S*, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019)). That is, "an alien who was apprehended within the interior of the United States necessarily must have been paroled under § 1226(a) . . . because he was not apprehended at the border as a § 1225 arriving alien . . . ." *Id.* (citing *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1116 (9th Cir. 2007)). The court in *Florida* also acknowledged that under *Jennings,* § 1226 applies to aliens "**already in the country**." *Id.*  In short, *Florida* does not support Respondents' position.

[9] The Laken Riley Act amendment provides for mandatory detention of aliens who have been arrested for, charged with, or convicted of certain enumerated crimes **and** are inadmissible under § 1182(a)(6)(A), § 1182(a)(6)(C), or § 1182(a)(7). *Id.* § 1226(c)(1)(E). Although, Petitioner was arrested and detained under § 1182(a)(6)(A) (alien "present in the United States without being admitted or paroled"), Petitioner has not committed an enumerated crime. Thus, mandatory detention of Petitioner under § 1226(c) would be inappropriate.

13

Statutes "should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). If Respondents' interpretation is correct and § 1225(b)(2) mandates detention of **any** alien present in the country and who has not been admitted, § 1226(c)(1)(E) would be meaningless because all aliens who are present in the country and have not been admitted would already be subject to mandatory detention under § 1225(b)(2). *See* 8 U.S.C. §§ 1225(a)(1), 1182(a)(6)(A)(i). The Court will decline to interpret § 1225(b)(2) in a manner that renders § 1226(c)(1)(E) superfluous.

Third, the record evidence—namely, the Notice to Appear—supports the conclusion that § 1226 applies. As in *Maldonado*, where the court determined that § 1226 governed because the Notice to Appear stated that petitioner was an alien who was present in the United States without being admitted or paroled, 2025 WL 2374411, at *11, here, Petitioner's Notice to Appear checked the box marked "You are an alien present in the United States who has not been admitted or paroled" but not the box marked "You are an arriving alien." (*See* Ligon Decl. ¶ 6, Ex. B.) Consistent with *Maldonado*, the Court finds that the under the plain text of the Notice to Appear, § 1226 governs.

For these reasons, the Court finds that Petitioner is not subject to mandatory detention under § 1225(b)(2)(A). Rather, § 1226 applies, and Petitioner is being unlawfully denied a bond hearing under § 1226(a).

## CONCLUSION

Because the Court has jurisdiction and the Petitioner's detention is governed by § 1226(a), the Court will order that the Petitioner be provided a bond hearing.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Samuel Olson, Director, St. Paul Field Office Immigration and Customs Enforcement, is hereby **JOINED as a Respondent**, pursuant to Federal Rule of Civil Procedure 21.

2. Petitioner Joaquin Herrera Avila's Verified Petition for Writ of Habeas Corpus [Docket No. 1] is **GRANTED**, as follows:

    a. Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), and is instead subject to detention, if at all, pursuant to the discretionary provisions of 8 U.S.C. § 1226(a);

    b. Respondents shall provide Petitioner with a bond hearing in accordance with 8 U.S.C. § 1226(a) within 7 days of the date of this Order in which the parties will be allowed to present evidence and argument about whether Petitioner is a danger to the community and presents a flight risk if not detained;

    c. If Respondents do not provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) as required herein, Petitioner must be immediately released from detention; and

    d. Within ten days of the date of this Order, the parties shall provide the Court with a status update concerning the results of any bond hearing conducted pursuant to this Order, or if no bond hearing was held, advise the Court regarding Petitioner's release. Further, the parties shall advise the Court whether any additional proceedings in this matter are required and submit any proposals for the scope of further litigation.

3. Respondents are **ENJOINED** from removing, transferring, or otherwise facilitating the removal of Petitioner from the District of Minnesota before the ordered bond hearing. If the immigration judge determines that the Petitioner is subject to the detention under 8 U.S.C. § 1226(a), Respondents may request permission from the Court to move Petitioner if unforeseen or emergency circumstances arise, which require Petitioner to be removed from the District. Any such request must include an explanation for the request as well as a proposed destination. The Court will then determine whether to grant the request and permit transfer of Petitioner.

4. Petitioner's Motion for Temporary Restraining Order [Docket No. 4] is **DENIED as moot**.

5. Within 3 days of the date of this Order, the parties shall file any requests for redaction.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 21, 2025
at Minneapolis, Minnesota.

                                              JOHN R. TUNHEIM
                                      United States District Judge